23-3713 Southern Iowa, United States v. Guy Wilson Mr. McGue, I see you're appointed under the Criminal Justice Act and the court appreciates your help in the case. Thank you. My pleasure. May it please the court. Good morning. My name is Jim McGow. I appear on behalf of Guy Wilson and I'm here today with three arguments. One, there was no evidence that Mr. Wilson sexually attempted to use a minor victim to produce any sexually explicit conduct. Number two, the jury instructions were in error. They were given to the court for a number of reasons. And number three, Mr. Wilson, based upon statements that were made before the trial, statements that were made during opening statement, statements that were made during closing arguments, was entitled and should have received acceptance of responsibility. What? Oh, acceptance. Yes. Yes, Your Honor. So on the first point. The second one seems to me our in-bank decision in McCoy leaves you dry. The second.  The jury instructions. The same instruction that was given here was given there. The standard instruction was not erroneous. What's left? A couple of things. Number one, I think that the court should consider removing dosed as an appropriate jury instruction to be given. We decided that. I understand. Decided that. I understand. But what this court has. You can take it to the in-bank court. We were wrong in McCoy. Yeah. But what the court has done, any time it discusses dosed, is it indicates that the dose factors are neither definitive nor exhaustive. And when I lost the objection to including the dosed factors as part of the instruction, as in McCoy, I asked the court to include at least the consideration that this court has repeatedly said every time this court talks about dose factors, that they're neither definitive nor exhaustive. We didn't say anything about it, did we? Well, you have. Every time this court has talked about dosed, it's specifically said. Were the same instructions given here? The pattern instruction was given. Yes. The pattern instruction, including the dose factors. Why don't you go to your other issues and save your instruction brilliance for the court in-bank. To. I mean, I understand. To just press the issue. I understand your point. But frankly, it ain't going to be. To me, it is not going to be reversible error, the nitpicking you want to do on our model instruction. Whether this court, based upon the decision in McCoy, the dosed is an appropriate instruction. Okay. That aside, that doesn't eliminate the whole jury instruction argument. Are you going to take all your time on this? No, Your Honor. Well, I mean, the other issues, there's a lot more to talk about. There is. But on the jury instruction, I specifically asked for another jury instruction that was not contradictory to dosed, that was approved in Petroski, that the court refused to give. And so, dosed is only part of the analysis as far as the jury instructions are concerned. But to move on, unless there's other questions on that issue, to move on, the question about whether there was any evidence that Mr. Wilson attempted to use a minor to capture sexually explicit conduct, there wasn't. There was no indication that putting a camera in areas where somebody is going to be grooming, the toilet, the camera pointed to the toilet, and a camera in the minor child's bedroom that showed her getting ready, and getting ready for bed, and getting ready for the day. In my view, just to cut to the quick, there are two reasons why this case is less difficult than McCoy. One, your client maneuvered the camera, which was not the case in McCoy. And two, the government charged attempt. So how can you survive McCoy with those negative differences? One is the maneuvering of the cameras, there was no time frame as to when that was done. We don't know if the maneuvering of the cameras was before an image, or after the images. Is that part of the government's proof? It is. Why? If they're going to argue that he's maneuvering the cameras to get a better shot, then I think they're incumbent to prove that to the jury. Well, that's a jury argument. And then your second issue is, your second part of your question is in regards to the government charge that he was convicted of attempt. But you have to attempt to use a minor to get sexually explicit. So I understand the argument under the Johnson case about maybe it was an attempt to get some lascivious exhibition, but you still, the first element is you have to attempt to use. The law we're applying, which wasn't the case when you briefed the case, is McCoy. Yes. All of your pre-McCoy arguments are massively changed by a difficult in bank case that was hardly unanimous, but is now the law for this panel. But as you indicate, Your Honor, McCoy was not an attempt case. This is. So the government... And we made clear in McCoy, at least the dissenters did, well, if they had charged, I think it was Judge Graz's dissent that explicitly said if they had charged attempt, I probably wouldn't be dissenting. The facts in McCoy were different because the defendant, this court relied heavily on the fact that McCoy orchestrated the situation. Numerous times in that opinion, the court indicated that McCoy directed the minor child. You don't think the jury could have found that here? No. Because he's putting a camera in her own bedroom, and he's putting the camera in the only bathroom in the place.  He's not doing anything. I understand your position. He's not doing anything to direct the minor child. And all of the cases that have discussed this issue, all the cases before this court that have discussed this issue, fall into two categories. One are those cases like Johnson, Ward, McCoy, Loesch. In all those cases, the court found that the defendant did something, orchestrated a scene, directed, put hands on, positioned, did something. And then you've got the cases on the other side of it where the defendant took some pictures in an unusual pose or an unusual, unnatural situation, Horn, Kimberling, Petrowski, Birch. This case doesn't fit in either one of those boxes. It's completely different because he's not doing anything to move or direct the minor. He's not capturing the minor doing anything unnatural or unusual. It is normal getting ready. It is normal going to the bathroom. That was McCoy. But in McCoy, your honor, as I indicated, this court specifically indicated it was different because the defendant directed. The defendant manipulated the situation or the scenario by directing that the child go in that particular bathroom where he knew there were cameras. This is different. Unless there's other questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning. Just a moment. Now, you didn't get to acceptance, which means you're leaving that for the briefs. You can't bring it up on rebuttal. You can use your rebuttal time or you can rest on the briefs. I'll just briefly, I'll just briefly, thank you, sorry Shelly, I'll just briefly go, just touch upon that to answer any questions that you have. But we specifically indicated, Mr. Wilson specifically indicated at the beginning of trial that the facts were not an issue. That the issue that was going to be before the court and before the jury was whether or not it constituted a lascivious exhibition. In opening statements, we got up and expressed to the jury that the facts were not going to be in dispute, that the government had alleged on page 36, I believe, or 33 of the transcript, that the government had alleged that he did these things and we said that's true. Same thing in closing arguments on page 250 in the transcript. Got up and again acknowledged that the facts were not in dispute. The only issue was whether the conduct, which he agreed to, whether the conduct rose to the level of a criminal violation vis-a-vis a sexually explicit conduct or a lascivious exhibition. Any questions particular to that issue? Well you didn't, you were challenging whether the images were lascivious. That's correct, Your Honor. And so we rejected an identical argument in Wallenfang. Wallenfang was a situation where there was a manipulation of the minor different than the facts here. How does that affect acceptance? Because in that situation, one of the elements is that the defendant did something. Here that wasn't the situation. Here it just came down to do these images where a camera secreted, do they rise to the level of lascivious? And I don't know from the Wallenfang decision, I don't know. With acceptance, aren't we dealing with the exceptions to the typical rule that if you go to trial and contest an element of the offense, you haven't accepted? Or it's not an abuse of discretion to deny acceptance. That's the issue, isn't it? I think so. I think that's accurate. I think that's accurate. And the application... I don't hear... I mean, a factual distinction between cases where we've applied that rule doesn't matter. The question is whether did you not concede... Did you put the government to its proof on an element of the offense, which therefore makes it not an abuse of discretion to deny acceptance? And I'm not hearing a response to that sort of... What I thought was the legal issue. The response is the commentary note indicates that if somebody's acknowledging the conduct, but claiming that the conduct does not rise to the level of a criminal violation, then acceptance is appropriate. That can be granted. That's inconsistent with our case, as I understand our case law. I mean, that comment, if that's what it literally says, is just off the charts. I've quoted that comment directly in the brief. And that's the comment that we relied upon in making the argument that, look, this is an unusual situation where somebody goes to trial and they're asking for acceptance.  I understand that. Thank you, Your Honor.  Good morning. May it please the Court. Shelley Suvin, representing the United States. The government is asking you to uphold the decisions of the district court. First and foremost, the court correctly denied Mr. Wilson's motion for judgment of acquittal. The government proved the elements of the offense in this case, and a reasonable jury could and did find that Mr. Wilson committed the offense beyond reasonable doubt. The evidence was sufficient to find Mr. Wilson guilty of the crime charged. At the trial, the primary issue... You might want to raise the mic a little bit. You're kind of fading right now. Okay, sorry. The primary issue before, at trial, was the sexual explicit conduct was the lascivious exhibition of the genitals, and did that rise to the level of lasciviousness? That was the issue primarily raised by Wilson at the trial. I know his reply brief talked about use, but I'm going to focus on the original brief, unless any of you have any questions for me on that issue. The important thing is the government did charge an attempt theory, and so on an attempt theory, the success of the visual depiction did not have to be attained. What was the intent, and did he take a substantial step in obtaining a depiction of lascivious exhibition? Does that distinction also go to the acceptance of responsibility argument? In other words, if he had been charged with an actual production of an image that contained a lascivious exhibition, could you imagine a situation where you could stipulate to all of the facts and maybe submit it to either the court or somehow submit that final question? Do you think that that's a situation that might fall within the acceptance of responsibility? Well, the exception to not getting it if you go to trial? It's a tricky question because there's other options that Mr. Wilson could have taken. He could have done a trial on the minutes. I'm sorry, he could have what? He could have done a trial to the court. He could have entered a conditional plea. And Mr. Wilson clearly has a right to go to trial in front of a jury, but when Mr. Wilson did that, he basically says, I'm denying all of the elements of the crime, and the government still has to prove them. The government had to bring in all of the witnesses to talk, to testify. There were several opportunities when Mr. Wilson did cross-examine witnesses at sentencing. I think one of the issues the district court raised was that you didn't take responsibility at the time of trial, and you're still not taking responsibility today. And so there were objections also to the pre-sentence report, which also seemed to mitigate if there was a true, if the issue was really only can I take this up on appeal. And I think that's the issue that the district court had concerns about. Plus, as Justice Loca mentioned, Wallenfang does seem to indicate that when that is an element the government has to prove, then that would also mitigate receiving acceptance of responsibility. Because you sort of have to say, as a matter of law, what I produced, putting aside the attempt, as a matter of law, what I produced just doesn't amount to it, probably? Probably, yes. That would be the legal question that could be preserved. The legal question for appeal, yes. So in this case, on the attempt theory, Mr. Wilson did several things to show that he took a substantial step to obtain these types of depictions. First of all, he did put hidden cameras in a preteen's bedroom in the vents, two different vents, and in the only bathroom in the home. So these cameras were hidden. And then the only place where cameras that were found were hidden were in this child's bedroom and also in the bathroom. So to say that he didn't take substantial steps because he didn't have the child do anything, it was her bedroom. So she's going to do everything that a normal person does in their bedroom, which includes change, be naked, plus various other things. And then the bathroom, there's going to the restroom, there's showering, similar to a lot of the conduct here. It is similar to McCoy in the bathroom sense, but then you have this whole bedroom situation. And to say that this is just normal change in behavior, that leads me to the next reason why the attempt was a valid decision by the jury to find him guilty, because he also did a lot of other things. He altered the camera. He was in there with a screwdriver, manipulating the lens, trying to switch the louvers. And this all happened in an eight-month period of time, so it's not like this was years. And then on top of that, there was all of these videos that were found on different devices. And then at points he pared down those videos and took screenshots, or still images, of conduct of the child. And they are similar to other cases where the head is cut off, so it's just the body. With that pubic area, there are still shots of the child touching her vagina. Which, if you say, oh, it's just in her bedroom and she's just changing, but when you have taken a screenshot and you've pared it down to that's all you see, that is about as close to lascivious exhibition of the generalist as could be, because the pubic area, the child touching her vagina, is the main focus of the image that Mr. Wilson has snapped from a video from the child's bedroom. One of the factors, the DOS factors, focuses, and I want to make sure I've got the language right, whether the picture or image is intended or designed to elicit a sexual response in the viewer. And I think this was part of some conversations about the instructions at the district court. It's kind of an interesting case because you've got, I guess we'll use the old phrase, the videographer, right? The person taking the images is, in this case, the viewer. Do you think that that was misleading? I mean, maybe it should have been in a viewer. So if you say the viewer, you almost collapse subjective and subjective assessment of the image. What do you think about it, at least under these facts, not sort of writ large, but under facts like this? Well, I know that at the request of Mr. Wilson, we took out, the district court took out that portion about the videographer or that's included in the factors, but I think a or the is probably just a semantic. But is that meaningful semantic here in the sense that the viewer, and I'm just curious if there's ever sort of an exception given the evidence as presented by the government in a particular case, the viewer here, I think generally you're right. I think we think, well, the viewer, whoever's viewing these because these are often, unfortunately, distributed or shared in some fashion. Here we have, I think the evidence that the government presented was the viewer, I don't know that, I don't think, as I understood it, there was no evidence of sharing. So I just wondered if a juror might read in here, the viewer, oh, well, we got to look at Mr. Wilson. And that's a hard question to answer because I don't know what the jurors thought, but I will tell, I will submit that other people did see the videos because it was a third party that found the videos. But it wasn't a person he was sharing with, right, for like, hey, I've made this, I think you might be interested to. Correct, but that person did contact law enforcement when they saw it, so maybe not a sexual response, but they knew it was maybe sexually inappropriate, and so which one could make that leap? Maybe that it would be, provide a sexual response to a person? I don't know if that helps or not, that's an interesting issue, question. But Mr. Wilson did do all of these things, and so that was the government's argue that, yeah, this is this substantial step in obtaining, in his attempt to obtain depictions of sexual explicit conduct. And so for those reasons, the district court did correctly overrule or deny the defendant's motion for judgment of acquittal. And as to acceptance, as I see, I'm out of time. Thank you, and just briefly, if I may, the government does ask, or the United States does ask, that you affirm the rulings of the district court. Thank you. Thank you. Mr. McGee, I'll give you a minute to respond to Pally's argument, if you'd like. Thank you. On the question of the viewer, I think that's definitely an issue. I think that that portion of the instruction was still in there, still given, it's part of the DOST, and I think that's one of the problems with that whole instruction is the inconsistencies between that instruction and what this court has determined on a number of those different factors over the course of a number of cases. Other than that, I don't have any other response. Thank you, Your Honor. I appreciate the extra time. Well, the case has been effectively brief, and arguments have been helpful on what's in the cracks or between the cracks, and we'll take it under advisement.